## THE CITY OF NEWARK v. THE STATE, EDWARDS, PROSECUTOR.

1. The charter of the city of Newark authorizes a just and equitable assessment of the expenses of opening any street, to be made upon the owners of all land and real estate to be benefited thereby. An assessment made against a party who owned a reversion only in lands to be benefited, which had yet forty-seven years to run, the owners of the fee not being assessed for any part of the expense, is not only unjust, but in violation of the charter.

2. Municipal authorities exercising the high prerogative of eminent domain when delegated to them, should take pains to ascertain who are the owners of lands taken for improvements, and who are subject to the assessment for benefits.

3. This case is not within the decision in *The State, Coles et al., pros.,* v. *Platt, Collector of Jersey City,* 4 *Zab.* 108.

---

In December, 1868, Alfred Edwards sued out of the Supreme Court a writ of *certiorari*, directed to the mayor and common council of the city of Newark, to remove into the said Supreme Court a certain assessment for benefits, and proceedings thereon had and made, in respect to the opening

of Bergen street, in the city of Newark, made upon him, the said Alfred Edwards.

The parties, by their respective counsel, upon service of the said writ, agreed to the following statement of facts:

1. That commissioners appointed by the common council of the city of Newark to assess the costs, damages, and expenses of opening Court street from Belmont avenue to the line of Clinton township, did, before any assessment of benefits was made, assess upon a certain tract of land owned by said Alfred Edwards, being one hundred and forty feet on Dark lane, extending beyond said Dark lane a distance of thirteen hundred and sixty-six feet, a large amount of money for benefits claimed to have been conferred by the said opening of Court street upon that land.

2. The said assessment remaining unpaid, said city, according to law, and the directions of the charter of said city in that behalf, caused to be inserted in the corporation newspapers of said city, an advertisement to the effect that said property so assessed for the opening of Court street as aforesaid, and which said assessment remained unpaid, would be sold by the treasurer of said city, at the time and place mentioned in said advertisement. In said advertisement the property of said Edwards was described as follows: " Commissioners' map, No. 242. Alfred Edwards' lot, 333½ feet front, on North side Court street, between Hunterdon and Bergen streets, $2,592.22."

3. That under said advertisements, said city claims to have lawfully sold on the 4th of May, 1865, and to have then lawfully purchased, for a term of fifty years from that date, and since then to have lawfully owned, and still lawfully to own, said term of and in the whole of said land of said Edwards first above described; but said Edwards claims that they then sold only so much thereof as was covered by the said advertisement.

4. That subsequently to said sale, Bergen street was opened by said city, and said Edwards was assessed in respect of two parts of said tract of land first described, for

benefits of said opening, to the amount of $587.69, of which $112.10 was upon a part of the tract admitted to have been covered by said advertisement. Said assessment for opening Bergen street was ratified June 5th, 1868, no assessment being made upon the city or any one else, in respect of said term of fifty years, which said city still holds and has never assigned, and which it claims to be valid.

The above is admitted for the purpose of the argument of this *certiorari*, and is to answer all the ends and purposes of a return to this writ, to which it is attached.

May 3d, 1869.

JOHN P. JACKSON,
*Attorney of defendants.*

THEODORE RUNYON, for
RUNYON & LEONARD,
*Plaintiff's attorneys.*

Upon this statement of facts, the said plaintiff insisted that the tax assessed upon him, for the purposes aforesaid, was erroneous and illegal, and the Supreme Court, after argument of counsel, ordered that the said assessment, as against the said plaintiff, be set aside.

This writ of error is prosecuted by the defendants below to obtain a reversal of the judgment of the said Supreme Court, and the following errors have been assigned:

1. That the said Alfred Edwards was liable to be assessed for the opening of Bergen street, in the city of Newark, as the owner of lands benefited by said improvement.

2. That the said Supreme Court, in giving judgment, erred in setting aside the assessment, so far as the lands of the prosecutors of said *certiorari* were concerned.

The plaintiffs prayed that the assessment upon the prosecutor might be affirmed, or that it might be affirmed and declared legal as far as respects the lands upon which said assessment was imposed.

The case was argued by—

*John P. Jackson*, for plaintiff in error.

*Theodore Runyon*, for defendants in error.

The opinion of the court was delivered by

THE CHANCELLOR. The assessment on Alfred Edwards, for the benefit to his lands by the opening of Bergen street, in the city of Newark, was removed into the Supreme Court by *certiorari*. That court set aside the assessment, and that judgment is brought up on this writ of error.

Edwards owned a tract of land in the city of Newark, extending thirteen hundred and six feet from Dark lane. This tract was assessed largely for the opening of Court street, by which it was intersected. On the map of the commissioners of assessment this tract was marked No. 242. For that assessment this tract was advertised for sale by this description: "Commissioners' map, No. 242. Alfred Edwards' lot, 333⅓ feet front on south side Court street, between Hunterdon and Bergen streets, $2,592.32." At the sale on May 4th, 1865, the city purchased the lot for a term of fifty years, and still holds the lease for that term.

The city claims that the sale includes the whole of Edwards' tract; Edwards claims that the advertisement does not include the whole, and that the city only purchased the part in the advertisement.

After this sale, the city opened Bergen street across the tract of Edwards, and he was assessed $587.69 for benefits, of which $112.10 was upon the part which he admits was included in the sale to the city. No assessment was made upon the city or any one else upon the term of fifty years, but the whole assessment for this tract was made upon Edwards.

The charter of the city of Newark (*Acts of* 1857, *p.* 166, § 105,) requires that the common council shall ascertain the costs and expenses of opening any street, and "cause to be

made a just and equitable assessment thereof, upon the owners of all lands and real estate intended to be benefited thereby, in proportion, as nearly as may be, to the advantage each shall be deemed to acquire." It provides in section one hundred and fifteen, that if the assessment shall not be paid, the common council may bring an action on the case therefor, against the owner, or may collect the same by sale of the lands. A supplement of February 20th, 1868, (*Pamph. Laws* 75, § 2,) provides that in such cases "the city surveyor and commissioners shall make diligent efforts to ascertain the names of the owners, but the failure so to ascertain the names shall not be a bar to the collection of the assessment, but the same shall be a lien upon the lands, as though the correct names had been ascertained."

These assessments are in all cases upon the owner. The direction of the statute is positive, and the assessment, when made, creates a debt for which he is at least *prima facie* liable in a suit to be brought. In the lands in question, Edwards only owned a reversion after a term which had yet forty-seven years to run, and which, by the usual rules of computation, was worth at least three times the value of his reversion ; the owners of this term were not assessed for any part of the benefits to this tract, but Edwards was assessed for the whole. This is not only of itself unjust, but is a clear and palpable violation of the express direction of the charter. It is true that the city may cause the land to be sold, and not bring suit against Edwards. But this possibility does not make an assessment laid directly contrary to law, a legal one. He may have a defence, and could possibly, in an action on the case, only be made subject to a proper part of this assessment. But without expressing any opinion on the question whether, in that suit, he could present such defence, it is clear that an unlawful proceeding, which puts upon the injured party the burthen of showing that he has some defence, ought not to be sustained.

Municipal authorities, in exercising the high prerogative of eminent domain when delegated to them, should take

pains to ascertain who are the owners of lands taken for improvements, and who are subject to the assessment for benefits, which is often a greater injury than the taking the land.

The act of 1868 does not give validity to assessments made upon one not liable, or even make them liens upon the land; it only provides that the *failure to ascertain* the name shall not be a bar to the collection, but the assessment shall remain a lien. Here, there was no failure to ascertain the *name* of the owner; that owner was the city of Newark itself, but it was a neglect to examine the title, and to make any assessment on the term for years. This was not the case intended to be remedied by the provision, on failure to ascertain the name.

This case does not fall within the decision in *The State* v. *Jersey City,* 4 *Zab.* 108. That was for city taxes in a charter which directed the assessors to assess "all real estate and chattels situate in the city," and nowhere directed an assessment to be made on the owners. And although in some of the subsequent proceedings the name of the owner was required to be given, yet for the assessment itself, which was the only matter under review, it was not required. And the opinion of the court expressly states that they are not bound to set aside the assessment because some of the means for its collection cannot be made effectual. The assessments in that case were to "the estate of Coles and to the heirs of Coles," and no individual was named or could be injured by it. The name, or rather the want of a name, in that case, was at most a mere lack of form. The act regulating the proceedings of courts in case of erroneous taxation had provided that no return of *taxes* or list of delinquents should be set aside *on certiorari* for lack of form, which did not impair the substantive rights of the plaintiffs *in certiorari,* and on that ground as no right of the owners was affected or impaired, the court affirmed the assessment. And that decision in no way supports this assessment.

It is insisted that the Supreme Court should have only

reversed the assessment so far as regards the part assessed on the portion of the tract admitted by the prosecutor to be included within the sale for fifty years. But, in the first place, no separate assessment on the other part is returned, and the Supreme Court, on *certiorari*, does not make a computation of what an assessment ought to be, and make a new assessment for that amount. The power to do this, given by the act of 1852, (*Nix. Dig.* 946, § 61,*) applies only to cases of taxes, not to assessments for opening roads or streets in a city. In these cases, the whole assessments, when shown to be wrong, must be set aside, as was done in cases of taxation before the statute of 1852.

· Besides, with the facts in this case submitted, it would be impossible to determine on the title as between these parties. From the map used on the argument as part of the case, it appears that No. 242 was used to designate the whole of Edwards' tract; it is the designation of the lot, the chief description, and if the location of the front between two streets, or the length of that front, is inconsistent with the whole tract being included, which I am by no means certain is the case, yet the maxim *falsa demonstratio non nocet* might relieve the case from all difficulty on that ground.

The judgment of the Supreme Court must be affirmed.

*For affirmance*—THE CHANCELLOR, THE CHIEF JUSTICE, DALRIMPLE,† SCUDDER, CLEMENT, KENNEDY, OGDEN, VAIL, WALES.  9.

*For reversal*—BEDLE, DEPUE, OLDEN.  3.

*Rev., p.* 1172, § 148.    †Voted for affirmance in part.